# Springer *versus* Arundel *et al.*

1. Ross gave all her estate to a trustee for the sole and separate use of an unmarried adopted daughter, he to collect the income and pay the whole to the separate use of the daughter for life without control of any husband she might take and without it being liable for his debts, her receipt alone whether covert or sole to be a discharge, and to permit her to let, &c., and take the rents, &c., with power of appointment, for want of which, to convey to her children at her death, and the lawful issue of deceased children. *Held*, that this was an active trust for the daughter for life with remainder to her children, who in default of appointment would take as purchasers.

2. In such case where an express estate for life is given and the remainder is not to heirs or issue generally, a power of appointment will not enlarge the estate into a fee.

3. The will was dated a few days before Ross's death; the daughter was married a few days after: *Held*, that the trust was in contemplation of marriage.

February 10th 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 61, to July Term 1869.

This was an ejectment, commenced April 29th 1868, by John B. Springer, trustee, &c., of Mary M. Clarke, late Ross, against Robert J. Arundel and the terre-tenants.

The premises were a house and lot on Fourth street, Philadelphia. On the 8th of September 1841, they belonged to Margaret J. Ross, widow, who on that day made her will, which contained the following clause:—

" I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, &c., unto Harris C. Fahnestock, and to his heirs, executors, administrators and assigns. In trust, nevertheless, for the sole and separate use and benefit of my beloved adopted daughter Mary M. Rogers, the said Harris C. Fahnestock, his heirs or assigns to collect and receive the rents, issues and profits of my real estate, and the interest, income and profits of my personal and mixed estate, and immediately after my decease, after paying the taxes and all other charges against the said estate to pay the whole of the said income or product of my said estate to the said Mary M. Rogers for her sole and separate use, during the term of her natural life, without the control or interference of any husband which she may hereafter take, and without being liable for his debts and engagements, and her receipt alone, whether she be covert or sole, to be a sufficient discharge therefor; or at her option to permit and suffer her the said Mary M. Rogers to let, demise, manage, direct and take and receive the rents, issues, incomes and profits aforesaid herself, for her own sole and separate use during the term aforesaid, without any liability to the debts and engagements of any husband which she may take; and from and immediately after her decease then to grant, convey, assign, transfer and pay over all the said estate, real, personal and mixed aforesaid to such person or persons as she the said Mary M. Rogers shall, notwithstanding any coverture, by her last will and testament, or any instrument in the nature of a last will and testament, under her hand and seal executed in the presence of two or more credible witnesses, direct and appoint to take and receive the same. And for want of such direction and appointment, then to grant, convey, assign, transfer and pay over all the aforesaid estate to such child or children as the said Mary M. Rogers may have at her death, if more than one as tenants in common, and the lawful issue of such deceased child or children who may then be deceased leaving issue, such issue taking such part and share only as his, her or their deceased parent or parents would have had and taken if living."

She appointed Mary M. Rogers executor of her will, and died

October 1st 1841. Mary M. Rogers was married to Samuel Clarke October 3d 1841; the will was proved October 4th. Fahnestock having died, Springer was subsequently appointed trustee in his place.

An agreement was made October 18th 1841, between Samuel Clarke and Mary M. his wife, of the one part, Charles J. Jack, of the second part, and Robert J. Arundel, of the third part, which recited: "Whereas, Margaret J. Ross, by an instrument purporting to be her last will and testament, dated the 8th day of September last past, devised and bequeathed the greater part of her property and estate in trust for the sole and separate use of her the said Mary M. Clarke (late Rogers) with powers to dispose of the same by writing in the nature of a last will and testament. *   *   * And whereas, the said Charles J. Jack and Robert J. Arundel are the next of kin and heirs at law of the said Margaret J. Ross, and have filed a caveat and opposed the probate of said instrument, but all the said parties being at the same time desirous of amicably settling their difference and preserving the harmony and good understanding of their families with each other, have agreed to compromise and settle their respective pretensions and claims, as hereinafter set forth and stipulated."

Arundel and Jack then agree that the will may be proved, and they release all their right and claim to the estate of Mrs. Ross.

The agreement then stipulates :—

" And they, the said Samuel Clarke and Mary M. Clarke, each, according to all the power and ability in him or her vested to act in the premises, and pledging themselves to a moral as well as legal responsibility for all they have undertaken and agreed to perform, have covenanted, &c., with the said Charles J. Jack and Robert J. Arundel respectively, &c., that there shall be paid by the said Mary M. Clarke, out of the rents, &c., of the property and estate bequeathed and devised for her separate use, for each and every year during the life of her the said Mary M. Clarke, unto the said Charles J. Jack $300 per annum; unto the said Robert J. Arundel $300 per annum; and at the decease of the said Mary M. Clarke, the principal of said annuity, to wit, $5000, shall be bequeathed or appointed unto the said Charles J. Jack, or his legal representatives, and $5000 unto the said Robert J. Arundel, or his legal representatives, by virtue of the power vested in her, the said Mary M. Clarke, in and by the said will." * * *

On the 3d of January 1846, Jack assigned all his interest under the agreement to John Bouvier.

On the 8th of June 1848, an agreement was made between Arundel and Bouvier of the first part, and Mr. and Mrs. Clarke of the second, by which it was recited that it had been agreed

[Springer v. Arundel.]

"that the parties of the first part should take and are hereby authorized to take possession of a certain house and store situate on the west side of Delaware Fourth street, between Market and Chestnut streets, city of Philadelphia, No. 22, and take and receive the rents, issues and income thereof, in lieu of interest to be paid to them by the said Samuel Clarke and wife during receipt of such rents, &c." * * And Arundel and Bouvier agreed that "while they shall be permitted to receive the said rents, &c., they will not ask or demand from the latter any other interest on the moneys that are or shall be owing to them than such as may be met and discharged by the net revenue of said house and store," &c. * * *

And when Arundel and Bouvier should have been paid from the income of the house after paying interest, &c., the sums of $3000 and $2500 respectively, they shall acknowledge the same to be full satisfaction of their claim under the agreement of October 18th 1841, and shall release all their estate under that agreement.

The house and lot mentioned in this agreement are the premises in dispute.

Samuel Clarke died March 19th 1859.

The court (Stroud, J.) instructed the jury to render a verdict for the plaintiffs, subject to the opinion of the court upon the point reserved, whether upon the whole evidence in the cause the verdict should not be for the defendants.

On the 24th of April the court in banc, Hare, P. J., delivering the opinion, entered judgment for the defendants on the point reserved, *non obstante veredicto*.

Stroud, J., dissented.

The plaintiff took a writ of error. He assigned for error, entering judgment for the defendants on the point reserved.

*G. Junkin*, for plaintiff in error.—A married woman's deed is void: Caldwell *v.* Walters, 6 Harris 79; Dorrance *v.* Scott, 3 Wharton 313; Glyde *v.* Keister, 8 Casey 85; Ramborger *v.* Ingraham, 2 Wright 146; Steinman *v.* Ewing, 7 Id. 53; Bear *v.* Bear, 9 Casey 525; Heugh *v.* Jones, 8 Id. 433; Schlosser's Appeal, 8 P. F. Smith 495. And this though the married woman receives and retains the consideration: Gliddon *v.* Strupler, 2 P. F. Smith 400; Rumfelt *v.* Clemens, 10 Wright 455; Colburn *v.* Kelley, 11 P. F. Smith 314. Where the truth is known to both parties there can be no estoppel: Hall *v.* Epley, 7 Casey 331; McAninch *v.* Laughlin, 1 Harris 371. A married woman can do nothing with her separate property unless the power is *expressly* given to her: Pullen *v.* Rianhard, 1 Wharton 514; Thomas *v.* Folwell, 2 Id. 11; Dorrance *v.* Scott, 3 Id. 309; Wallace *v.* Coulston, 9 Watts 137; Cochran *v.* O'Hern, 4 W. & S. 95; Lyne *v.* Crouse, 1 Barr 111; Heath *v.* Knapp, 4 Id. 228; Wright *v.*

[Springer *v.* Arundel.]

Brown, 8 Wright 224; Jones's Appeal, 7 P. F. Smith 372; Lancaster *v.* Dolan, 1 Rawle 231; Rogers *v.* Smith, 4 Barr 93. The law will not strike down such trusts: Barnett's Appeal, 10 Wright 392; Bacon's Appeal, 8 P. F. Smith 504. Where an instrument creates a separate use it will be maintained if there is a subsequent marriage: Snyder *v.* Snyder, 10 Barr 423; Jamison *v.* Brady, 6 S. & R. 466. A testator may so tie up a provision for a child that it shall not be liable for the child's debts by way of attachment or assignment, or anticipation: Girard Co. *v.* Chambers, 10 Wright 485; Vaux *v.* Park, 7 W. & S. 19; Jones's Appeal, 7 P. F. Smith 372.

*J. B. Townsend,* for defendants in error.—Coverture at the time of the transmission of the estate or a settlement in contemplation of *a particular marriage* are required to impose upon the property granted a restriction against alienation. A limitation to the separate use of a woman who is sole, or who being covert becomes discovert, does not impose any restriction on her power to alien, dispose of or encumber her property, and a second marriage will not revive the trust which existed during the first coverture: Smith *v.* Starr, 3 Wharton 62; Hamersly *v.* Smith, 4 Id. 126; Quigley *v.* Commonwealth, 4 Harris 356; Harrison *v.* Brolasky, 8 Id. 302; McBride *v.* Smyth, 4 P. F. Smith 250; Freyvogle *v.* Hughes, 6 Id. 228. Land passes to a devisee without probate of the will, which may on due proof, be given in evidence in ejectment without having been filed with the register: Smith *v.* Bonsall, 5 Rawle 86; Asay *v.* Hoover, 5 Barr 21; Rowland *v.* Evans, 6 Id. 435; Girard *v.* City, 4 Rawle 323; Hays *v.* Harden, 6 Barr 409; Barker *v.* McFerran, 2 Casey 211; Flannery's Will, 12 Harris 502. Mrs. Clarke's appointees for a valuable consideration are delegated in her stead to take the rents and profits; this will always be maintained in equity unless there be express prohibition of alienation or anticipation: Dowell *v.* Dew, 12 Law Journal, N. S. Chan. 158; 2 Roper on Husband and Wife 184; 2 Story's Eq. Jur. 567; Major *v.* Lansley, 2 R. & M. 355; Broughton *v.* Langley, Equity Cases, Abr. 383; Phillips *v.* Smith, 12 East 455; Gregory *v.* Henderson, 4 Taunt. 772.

The opinion of the court was delivered, May 5th 1870, by

AGNEW, J.—Mary M. Rogers (now Mary M. Clarke) was a feme sole at the time of the death of Mrs. Margaret J. Ross. By her will Mrs. Ross devised and bequeathed real and personal estate to a trustee to collect and receive the rents, issues and profits of her real estate, and the interest, income and profits of her personal and mixed estate, and after payment of taxes and all other charges against the estate, to pay the whole of the income or product of the said estate to Mary M. Rogers, for her sole and separate use

[Springer v. Arundel.]

during the term of her natural life, without the control or interference of any husband which she might thereafter take, and without being liable for his debts and engagements, and her receipt alone, whether she be covert or sole, to be a sufficient discharge therefor. This was followed by a power of appointment by Mary M. Rogers, by will, and on failure to appoint by a trust, to convey and transfer the estate to her child or children. This will was executed by Mrs. Ross twenty-three days before her death, and Mary M. Rogers married Samuel Clarke two days after Mrs. Ross's death. Under these circumstances the District Court held that no valid trust was created for Mary M. Rogers by the will of Mrs. Ross, and consequently she was competent to execute the deed referred to in the evidence. We think the District Court erred in this opinion. The will created an active and operative trust for Mrs. Clarke for life only, with remainder to her children, who in default of an appointment by Mrs. Clarke by will, would take as purchasers, and not by descent. In such case, where an express estate for life is given, and the remainder is not to heirs or issue generally, a power of appointment will not enlarge the estate to a fee: Dodson v. Ball, 10 P. F. Smith, and authorities there cited. Under the circumstances of this case the trust created for Mrs. Clarke (then Miss Rogers) was plainly in contemplation of marriage. As remarked in Wells et al. v. McCall, antea 207, the creation of the trust constitutes the evidence of the fact of the marriage being in the contemplation of the devisor, and this being followed in so short a time by the consummation of the marriage, concludes the proof. Having considered this question fully in the case just referred to, further observation is unnecessary.

> Judgment reversed, and judgment for the plaintiff on the point reserved in the court below against the defendants with costs.